## VERSER v. FORD ET AL.

1. HABEAS CORPUS: *For custody of infant child, by what principles governed.*

In deciding contests upon writs of *Habeas Corpus* for the custody of infant children, the principles adopted in the Chancery Court must govern. No rigid rules to govern the practice have or can be formulated. Subject to a few general rules, to be taken as a

guide, the Chancellor must exercise his judgment upon the peculiar circumstances of the case, and act as humanity, respect for the parental affection and regard for the infant's best interest may prompt. All three should be considered. Neither should be conclusive.

2. PARENT AND CHILD: *Custody of child; preference to whom given.*

As against strangers, the father, however poor and humble, if of good moral character and able to support the child in his own style of life, cannot be deprived of the privilege by any one whatever, however brilliant the advantage he may offer. It is not enough to consider the interest of the child alone. And as between father and mother, or other near relation of the child, where sympathies of the tenderest nature may be confidently relied on, the father is generally to be preferred.

APPEAL from *Lonoke* Circuit Court.

Hon. J. W. MARTIN, Circuit Judge.

### STATEMENT.

Petition for *habeas corpus* filed by Verser against Ford and his wife, to obtain from them the custody of his infant child.

The opinion sufficiently states the case.

*Clark & Williams*, for appellant:

In support of the father's right to the custody of the child, cited *Reeves' Domestic Relations*, p. 290 *et seq*; 2 *Kent's Com.*, p. 193 (*Mar.*); 5 *Bacon's Abridgement, Infancy and Age*, "*M*," p. 169 *Gantt's Digest*, sec. 3035; *Wright* v. *Johnson*, 5 *Ark.*, 687. None of the exceptions to the rule touch this case.

The Court is bound to issue the writ and change the custody. *McPherson on Infancy*, 152; *Rex* v. *Deloval*, 3. *Burrows*, 1434.

*R. A. Howard,*
and
*R. C. Newton,*
} for appellees:

The father's right not positive and unqualified. *Gantt's*

*Digest, sec.* 3035; *Kent's Com.*, 194; *Hurd on Habeas Corpus, pp.* 456–7; and authorities cited. Also, *Ib., pp.* 540 *et seq;* 21 *N. J. Eq.*, 384; 11 *Bush. (Ky.)* 403; 41 *Ind.*, 92; 47 *How. (Tr.) (N. Y.)* 408; 37 *Ind.*, 164.

That there had been a permanent transfer is *resjudicata. Hurd on Hab. Corp., p.* 463. Such was Verser's understanding. He had the right to transfer the custody. *Ib., p.* 537 *et seq; Commonwealth* v. *Dougherty*, 1 *Pa. Leg. Gaz., Rep.* 63.

Judgment should have been simply one of dismissal, with costs. *Gantt's Digest, secs.* 3108 and 3126; 25 *Wend.*, 64; *Hurd on Habeas Corp.*, 450, 456.

EAKIN, J. This is a contest for the custody and nurture of an infant girl of tender age, whose mother died at her birth, and who, from the first two or three days of her existence, has been cared for and kept by the grand-parents. The father now demands the child again, having since married, and being in circumstances to provide and care for it. **1. HABEAS CORPUS: For custody of infant child, by what principles governed.**

In deciding such cases upon writs of *habeas corpus*, the principles adopted in the Chancery Court must govern. The proceedings are special. No rigid rules to regulate the practice have or can be formulated. Only a few general principles can be taken as guides, subject to which the Chancellor must exercise his judgment upon the peculiar circumstances of the case, and act as humanity, respect for the parental affection, and regard for the infant's best interests may prompt. All three should be considered; neither ought to be conclusive.

It is one of the cardinal principles of nature and of law that, as against strangers, the father, however poor and humble, if able to support the child in his own style of life, and of good moral character, cannot, without the most shocking injustice, be deprived of the privilege by any one **2. PARENT AND CHILD: Custody of child, to whom preference given.**

whatever, however brilliant the advantage he may offer. It is not enough to consider the interests of the child alone.

As between the father, too, and the mother, or any other near relation of the infant, where sympathies on either side of the tenderest nature may be relied on with confidence, the father is generally to be preferred. In the great majority of cases, his greater ability and knowledge of the world renders him the fittest protector, although that is not the test. The preference is conceded to the ties of duty and affection, and attends the primary obligation of the father to maintain, educate and promote the happiness of the child, according to his own best judgment and the means within his power. Any system of jurisprudence which would enable the Courts, in their discretion and with a view solely to the child's best interests, to take from him that right and interfere with those duties, would be intolerably tyranical, as well as Utopian.

Nevertheless, keeping these leading principles always in view, there are exceptional cases, depending on their own circumstances, in which the sovereign power of the State as *parens patriæ*, acting through the Chancellor, has interfered so far as may be necessary to afford the child reasonable protection. It is impossible to define them, further than to say that they should be of such urgency as to overcome all considerations based upon the natural affections and moral obligations of the father; and it may be added that this delicate discretion will be more freely exercised in behalf of one whose ties of affection are next to those of the father himself, upon whom the accompanying moral obligations would devolve in case of the father's death.

In this case the motherless infant, two days old, was taken by the maternal grand-mother, with the father's assent, and tenderly guarded through all the perils of infancy. There has been all of a mother's care, and scarce-

ly less than a mother's affection. The child is yet scarcely three years of age, delicate in health ; she is in a safe asylum, surrounded by those who may be trusted to guard her anxiously against pernicious influences, and to do their best to instill into her mind such principles as will promote her future usefulness and happiness. They, too, plead the full strength of natural affections.

The infant needs female care and guidance of that patient, ever-watchful nature which is better insured by the natural affection of a grand-mother than by the inexperienced efforts of a father, or the sense of duty of the second wife. There is no reason to doubt that the step-mother would do all that duty might demand of her in that relation, but all disinterested persons would involuntarily feel that there would be some risk to the infant in the change of her surroundings.

The father has shown himself to be a moral man, with the means of discharging his parental obligations. Certainly, under the circumstances, if he had been in possession of the child, no Chancellor could have found warrant in equity for taking her away to be placed under the grand-mother's care. But it cannot be ignored that the case does not present that attitude.

The child was placed where she is by the father's assent, and has so remained. By his assent ties have been woven between the grand-mother and grand-daughter, which he is under strong obligation to respect, and which he ought not wantonly and suddenly to tear asunder. He has shown no urgent necessity for present action, and his appeal to the Circuit Court for aid was not such as to enlist in most hearts any very strong sympathy.

The order of the Court does not preclude him hereafter, as the child becomes more advanced in years, from applying to obtain the custody of her person, or directing her

·education. He may see her at all reasonable times; and at the cost of some deference to and forbearance with his ·child's grand-father, which it would not compromise his ·self-respect to render, he may avoid all unpleasant ren-·countres. If not, the Courts are always open to him for a ·renewed application to be allowed to take the child away.

The Circuit Judge made the order with the parties per-·sonally before him, and may have had some means of judging not apparent to us. He seems to have made a temporary arrangement, which commends itself to us as naturally just, and in which, we think, the father, for a while at least, ·should acquiesce, until the course of time produces new ·circumstances.

Affirm the order.