Donna **PERKINS** and Charlene **DIGGS**
*v.* Calvin Ronald **PERKINS**

CA 79-111                                                    589 S.W. 2d 588

Opinion delivered October 3, 1979
[Petition for review denied November 13, 1979.]*
and released for publication November 16, 1979

*Perkins & Diggs v. Perkins,* 267 Ark. 112, 589 S.W. 2d 29 (1979).

958

*McMillan, Turner & McCorkle,* by: *Toney D. McMillan,* for Charlene Diggs.

*B. W. Sanders,* for Donna Perkins.

*Henry Morgan,* for appellee.

GEORGE HOWARD, JR., Judge. This is a child custody case involving a five year old boy. The litigants are the father, mother and maternal grandmother who was awarded

custody on May 10, 1976, under a decree terminating the marriage of the mother and father.

The question presented for our determination is whether the trial court's decree of November 11, 1978 — which awards custody of the child to the father — is supported by a preponderance of the evidence.

## THE FACTS

On May 10, 1976, Donna Perkins obtained an uncontested divorce from Calvin Ronald Perkins. By agreement of the parties, custody of their three year old son was awarded to Mrs. Charlene Diggs, the maternal grandmother, with reasonable visitation rights accorded to Donna and Ronald. At the time, Donna was a high school student residing with her mother, Mrs. Diggs, and Ronald was stationed with the United States Air Force in Guam.

On March 22, 1978, Ronald petitioned the Clark County Chancery Court for custody of his son contending that since the entry of the order awarding custody to Mrs. Diggs "circumstances have materially changed" and [t]hat . . . Petitioner is now remarried and is able to provide the minor child with a good home and all the benefits which the minor child needs to enjoy a happy and productive life; . . . Petitioner and his wife are both fit people to now have custody of the minor child, and that . . . Petitioner has proper sources to provide for the needs of the minor child, . . ."

On March 23, 1978, Donna and Mrs. Diggs filed their joint answer denying that Ronald should be awarded custody contending that Ronald was still in the military service and, consequently, subject to constant "moving around and that his wife is still a teenager and does not have the experience nor maternal concern" that is afforded by both the natural mother and the maternal grandmother.

Donna also filed her petition for change of custody, alleging:

That since the Decree of Divorce herein on May 10, 1976, your Cross-Petitioner, Donna Lee Perkins has materially changed her economic ability to care for said child, has matured a great deal, being now twenty-three years of age and stands daily in the position of mother to said minor child and that the custody given to her mother, Charlene Diggs, was for the purpose of allowing both parents to grow up and mature and that she has now done so and should therefore be awarded permanent care, custody and control of this minor child, Ronald Keith Perkins.

After conducting a meticulous and searching trial of the issues, the trial court dismissed the petition of Donna for want of equity and:

1. Awarded custody of Keith to the father, Ronald Perkins, with reasonable visitation rights, including specified holidays and two months with the grandmother during the summer, to the mother and grandmother.

2. Held that the child could not be moved from the jurisdiction of the court without the court's permission.

3. Held that in the event the father should be required to perform military duties outside the continental shores of the United States, the court would make a new determination regarding custody of Keith.

4. Reserved jurisdiction of the case and the right to change the decree for good cause.

Appellants rely essentially upon the following points for reversal of the trial court's decree:

1. The trial court erred in finding that a change in circumstances warranted the change in custody.

2. The trial court erred in awarding custody of the minor child to the father.

3. The trial court erred in ruling that evidence of incidents which occurred prior to the divorce was inadmissible

on the grounds that such evidence should have been presented at the original divorce hearing.

## THE DECISION

As in most child custody proceedings, the testimony offered by each litigant is sharply controverted by the opposing party. Witnesses called by a litigant expound and emphasize the virtues of one, while articulating the vices and deficiencies of the other. Thus, it is abundantly clear that credibility is crucial and pivotal in evaluating and according the proper weight to the testimony offered.

It is, perhaps, expedient to set out immediately certain basic and fundamental rules of law that are controlling in child custody proceedings.

In *Baker* v. *Durham*, 95 Ark. 355 (1910), the Arkansas Supreme Court observed:

> . . . [A]s between the parent and grandparent, or anyone else, the law prefers the former unless the parent is incompetent or unfit, because of his or her poverty or depravity, to provide the physical comforts and moral training essential to the life and well being of the child. It must be an exceptional case where the evidence shows such lack of financial ability or such delinquencies in character on the part of the father as to imperil the present and future welfare of his child before a court of chancery will deprive him of the duty and privilege of maintaining and educating his child, and of the pleasure of its companionship. *See Also: Wofford* v. *Clark,* 82 Ark. 461 (1907).

In the case of *Kirby* v. *Kirby*, 189 Ark. 937, 75 S.W. 2d 817 (1934), our Supreme Court stated:

> It is the well-settled doctrine in this state that the chancellor, in awarding the custody of an infant child or in modifying such award thereafter, must keep in view primarily the welfare of the child, and should confide its custody to the parent most suitable therefor, the right of each parent to its custody being of equal dignity.

*See also: Digby v. Digby*, 263 Ark. 813, 567 S.W. 2d 290 (1978); *Walker v. Walker*, 262 Ark. 648, 559 S.W. 2d 716 (1978).

In *Phelps v. Phelps*, 209 Ark. 44, 189 S.W. 2d 617 (1945), the Court made the following comment:

> . . . If the welfare of the child so requires, the decree may be modified without a change of circumstances, on the presentation of facts which although existing at the time of the original decree were not then presented or considered. The welfare of the child is the controlling consideration, and whenever it is shown that it is best for the welfare of the child that it be transferred from the custody to which it was awarded, the court will in its discretion modify the decree; otherwise modification is properly denied. The decree should not be modified merely to conform to the wishes of a parent, nor should it be modified for the reward or punishment of a parent, but the rights and wishes of the parents should, if possible, be considered. . . .

In *Daily v. Daily*, 175 Ark. 161, 298 S.W. 1012 (1927), the Supreme Court held:

> . . . [W]hatever the result of the agreement between the husband and wife with respect to the custody and support of their minor child, such agreement does not affect the right of a court of equity to award the custody of the child to either parent and to make reasonable provision for its support and education. The reason is that the public has an interest in the matter, and that the interest of the child is the paramount consideration of the court. . . .[1]

The thrust of Donna's argument for reversal may be

---

[1] Act 278 of 1979 General Assembly of the State of Arkansas, provides, in part:

> SECTION 1. In an action for divorce the award of custody of the children of the marriage shall be made without regard to the sex of the parent but solely in accordance with the welfare and best interests of the children.
> SECTION 2. All laws and parts of laws in conflict with this Act are hereby repealed.

briefly summarized as: While initial custody of Keith was awarded to the maternal grandmother, Mrs. Diggs, rather than to either parent — because neither parent, at the time, was capable of taking custody alone — she has now matured, is gainfully employed, is a responsible person and, as a matter of fact, has been the *"de facto* if not the *de jure* custodian of Keith since birth."* Thus, it would be to the best interest of the minor child for custody to be awarded to the mother; and that the trial court erred in dismissing her petition for want of equity.

The evidence, however, discloses that within a month after Donna's divorce from appellee, she began dating Gary Barfield, a 17 year old fellow high school student. Gary testified while he considered Donna as his girlfriend before her divorce was final, he did not date her alone prior to the divorce. Gary admitted that he had lived with Donna in an apartment complex for a short period and that while Donna occupied the apartment, the police, at the request of Donna, broke into the apartment in order to get him to leave whereupon he advised the police of marijuana in a chest of drawers resulting in a possession charge lodged against Donna; that he and Donna were charged with theft of property and while Donna was not, in fact, guilty of the charge, she did enter a plea of guilty believing that she could not establish her innocence.

Moreover, Gary stated that Donna was accused of making harassment telephone calls to his aunt's residence, where he once resided, and that his aunt had repeatedly requested Donna to cease making such calls; and upon her failure to do so, the aunt complained to and sought assistance from the police in seeking a solution to the problem. As a consequence of Donna's promise — during a conference at the police station between the principals, including Mrs. Diggs — not to make any further calls, the charges were not pressed against Donna. Gary admitted, during the conference, that he had had sexual relations with Donna at the home of Mrs. Diggs, although Mrs. Diggs had requested him not to visit her home. This admission was made while Keith was present in the police station. However, it is not clear whether Keith was within hearing range at the time. Gary later repudiated the statement. Nevertheless, it is plain that Gary visited the home

of Mrs. Diggs frequently and Keith is occasionally in the company of Gary and Donna in Mrs. Diggs' home as well as outside the home.

In addition, Gary admitted that he was charged with the offense of destruction of private property after he broke out a window in Mrs. Diggs' automobile; that he left home because he could not get along with his parents.

It is readily obvious that while Gary is a young man and is very much Donna's junior in terms of age chronologically, Gary has had quite an involvement with the police, which has, although more or less as a victim of circumstances, involved Donna equally as much.

The following exchange took place between the court and Gary:

THE COURT: She's asking for custody of the child. Her mother presently has custody. If she obtains custody of the child will you still expect to be going with her and visiting with her?

WITNESS: Yeah.

On the other hand, Mrs. Diggs, the maternal grandmother, argues that a litigant seeking modification of a decree awarding custody of a minor child has the burden of proof of showing a change in conditions in order to justify a modification; that the evidence falls short of showing a change in the conditions of her home in any way that affects adversely the minor child.

First, and perhaps foremost, Mrs. Diggs acknowledged, on cross-examination, that when the initial custody was awarded to her, she was cautioned by the trial court that the order was temporary in scope and future circumstances would perhaps dictate a change.

While Mrs. Diggs argues that there have been no changes in the circumstances of her home warranting the trial court's action in placing Keith with his father, we do not perceive the trial court's decree resting exclusively on a find-

ing that there has been a change in circumstances. It is plain that the trial court predicated its ruling essentially on what was for the best interest of the minor child. Nevertheless, we do not agree with Mrs. Diggs' contention that there are no relevant changes in the circumstances. Briefly, it is clear that Mrs. Diggs was a party to the conference at the Gurdon Police Station during the encounter between Donna, Gary and his aunt; Mrs. Diggs testified that tempers were flaring during the conference and when asked if Keith was present, Mrs. Diggs responded that she gave him money to get a Coke, but didn't have any idea where he was. Moreover, Mrs. Diggs also testified that Barfield had come to her home in an effort to see Donna numerous times and on one occasion, he appeared intoxicated.

It is undisputed that appellee has remarried; his wife is employed at the Francis Allen School for Exceptional Children and prior to this employment, she was employed at Educare for two years and has had further experience at an institution for retarded children. The present Mrs. Perkins emphasized that the children that she deals with are at a primary level and their ages are six through ten; she further emphasized that she is willing to look after and care for Keith who has a weight problem. The appellee has an apartment which has two bedrooms, thus, affording Keith an opportunity to have his own room, and is contemplating purchasing a home in a suburban area; appellee is a member of the United States Air Force and expects to remain at the air base in Jacksonville indefinitely. Appellee's wife testified that while she and appellee have been married for one year, she has known appellee for approximately two years and has had the occasion to observe her husband and Keith and that it is her conviction that they have a good relationship. Moreover, she testified that her relationship with Keith is good and that Keith has accepted her.[2] We think it significant to note that the trial court, in rendering his opinion, observed that he was persuaded that Keith needed a father's image. Further, it is clear that the trial court was impressed with the secure and peaceful family life that exists between appellee and his present wife.

[2]Counsel, during oral argument, advised the Court that custody of Keith has been delivered to appellee and that the minor child is now enrolled in school in the Little Rock community.

Appellants finally argue that the trial court committed reversible error in ruling that evidence of incidents relating to appellee's conduct, which occurred prior to the divorce action, was inadmissible on the ground that such evidence should have been presented at the original divorce proceeding. In making this ruling, the trial court emphasized that he was endeavoring to avoid retrying the divorce action. The court stated, however, that he would permit questions relating to prior incidents on cross-examination and if appellee denied that the incidents occurred, appellants would be permitted to introduce their evidence on rebuttal. We are not persuaded that the appellants were prejudiced in any way by the court's ruling inasmuch as the testimony of alleged incidents — purported erratic behavior on the part of appellee, i.e., appellee purportedly slapped Keith and a neighbor's child and twisted the arm of the child's mother, Marilyn Wiggs; — prior to the divorce did get into the record. The court, after carefully considering this evidence and the credibility of the witnesses, disregarded the testimony.

After carefully considering the evidence, we cannot state with certainty that the holding of the trial court is not supported by a preponderance of the evidence. It must be remembered that where the evidence is sharply controverted, as here, the trial judge is in a superior posture to evaluate the testimony of the witnesses and accord the testimony the proper weight and consideration for he has the advantage of observing the demeanor, attitude and temperament of the witnesses while we rely upon the printed record.

Also, it must be remembered that in child custody matters, the court must keep in view primarily the welfare of the minor child and the principles that between parent and grandparent, the law prefers the parent unless the parent is incompetent or unfit; and that custody is not awarded to comfort the emotions of either parent.

Furthermore, we do not perceive the trial court's decree as an inflexible and permanent custody order, but on the contrary, the court retained jurisdiction "and the right to change this order for good cause. . . . If I'm going to be responsible for what is best for this kid, I'm going to exercise my authority if I have to."

We, therefore, affirm the trial court with direction to enter an injunction enjoining the appellee, Calvin Ronald Perkins, from removing Keith Perkins from the jurisdiction of the court without first petitioning the trial court for an order and a hearing conducted on such request with proper notice afforded to all interested parties.

Affirmed as modified and remanded.

WRIGHT, C.J., HAYES and PENIX, JJ., dissenting.

MARIAN F. PENIX, Judge, dissenting. I believe the custody of Keith Perkins should remain with his maternal grandmother, Charlene Diggs, appellant, in Gurdon, Arkansas. Mrs. Diggs' home has been Keith's home since his birth. Both his mother and his father voluntarily placed Keith with Mrs. Diggs. From all the evidence it is clear this has been a fine environment for young Keith. He has the steady affection and care of both his mother and his grandmother.

From the record I can find no compelling reason to uproot this child and place him with a stepmother and his father. There is no indication his father will not continue to be transient in his career in the U.S. Air Force. There is every indication Mrs. Diggs and Keith's mother will remain in Gurdon. The record reflected incidents involving Keith and his father in which the father was excessively, physically rough with his very young son. The record also reflects the father's poor judgment in taking a five year old child hunting with a shot gun. There was testimony the father considers physical manifestations of his temper and his authority as being the proper manner in which to deal with other people as well as with Keith. The emphasis the father places in machismo is unfortunate for Keith to say the least.

Keith's mother has also made mistakes. However, it is my feeling her mistakes are not of the nature which directly affect her relationship with Keith. The father's attitude and mistakes are not the kind from which Keith can escape.

Appeals from chancery court are heard de novo. In reviewing this record I believe the best interests of Keith

would be served by leaving his custody with his grandmother Charlene Diggs. However, I believe the father's visitation rights should be liberalized, especially during non-school periods.

I would reverse the chancellor's order and continue Keith's custody with his grandmother, Mrs. Diggs.

Therefore, I respectfully dissent.

ERNIE E. WRIGHT, Chief Judge, dissenting. I respectfully dissent from the decision of the three judges of the Court which affirms, with slight modification, the judgment of the trial court removing custody of Keith Perkins, age six years, from his maternal grandmother, Charlene Diggs. The child had been in Mrs. Diggs' custody since May 10, 1976 as provided by the divorce decree, and the child's mother, Donna Lee Perkins, resided in the home with her mother and child. The evidence was undisputed that Mrs. Diggs was a stable and wholesome person who provided a good home for the child.

The record does not, in my view, reflect changes in circumstances since the prior decree that indicate a change in custody to the father would serve the best interest of the son.

I would reverse the decree, leave the custody undisturbed and award extended summer visitation with the father.

M. STEELE HAYS, Judge, dissenting. I cannot agree that the evidence in this case justifies an outright change of custody of Keith Perkins as ordered by the Chancellor. Since birth, Keith has been with his grandmother and his mother and there was no compelling basis for a sudden reversal of that arrangement. In view of Keith's age, six years, and the evidence in its entirety, I believe that increased summer custody in appellee would be desirable, but the change as ordered I consider to be too abrupt. No doubt each home has something beneficial to offer Keith, but I cannot conclude that his best interest is served by a removal from the only home and the only community that he has known for his entire life. I would reverse the change of custody and increase the periods of summer and interim visitation.