Kim Bates McKEE and Larry McKEE *v.* Michael BATES

CA 82-465                                          661 S.W.2d 415

Court of Appeals of Arkansas
En Banc
Opinion delivered November 30, 1983

*Bob Keeter,* for appellants.

*Maddox & Miller,* by: *David Maddox,* for appellee.

JAMES R. COOPER, Judge. The appellant, Kim (Bates) McKee, and the appellee, Michael Bates, were married in 1972 and lived together one day before they separated. One child, Patrick John Bates, was born of the marriage on January 29, 1973. They were divorced on October 5, 1973. Kim (Bates) McKee then married the appellant, Larry McKee, on February 11, 1974. One child, Charity, was born of this marriage. Patrick was in the sole custody of the appellants until January 8, 1979, when the appellants divorced. After their divorce, Kim McKee had custody of both children. Larry McKee supported both children during this period and visited the children on a regular basis. In October, 1980, both children went to live with Larry. Kim gave Larry custody of Charity and a Special Power of Attorney to authorize Larry to care for Patrick.

The appellee admittedly did not communicate with or support Patrick from 1973 through 1979. Although the appellee did see Patrick occasionally in 1980, he did not furnish any support. In 1981, the appellee did not see or support the child until October, when he filed a petition for change of custody. The appellants answered the petition and also filed a petition for adoption in probate court. Kim

had given her written consent to Larry to adopt Patrick. The matters were combined for trial. On the day of trial, March 31, 1982, the appellants amended their petition to request that custody of Patrick be granted to Larry or, in the alternative, to Kim, should the adoption petition be denied. After hearing the evidence, the probate judge denied the adoption based on a finding that it would not be in the best interest of Patrick, but granted custody of the child to Larry, subject to reasonable visitation and child support payments by the appellee. The appellants appeal the denial of the petition for adoption. The appellee cross-appeals the denial of his custody petition.

For their first two points for reversal the appellants argue that the probate judge erred in denying the petition for adoption because they had proven by clear and convincing evidence that the appellee had failed, without justifiable cause, to support or communicate with the child, and thus the appellee's consent was not required for the adoption. The appellants rely on Ark. Stat. Ann. § 56-207 (a) (2) (Supp. 1983), which provides:

> Consent to adoption is not required of a parent of a child in the custody of another if the parent for a period of at least one [1] year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree.

This statute will allow an adoption over the objections of a non-consenting parent, but only if all of the elements are proven by clear and convincing evidence. Since the probate judge determined that, considering the best interests of the child, the adoption should *not* be granted, he appears to have found it unnecessary to determine whether the appellee's consent was necessary. Therefore, we need not address this issue. However, we note that even if the trial court *had* decided that the father's consent was unnecessary, such a finding would not require that the adoption be granted. Before an adoption petition may be granted, the probate judge must find that the adoption is in the best interest of the child. See *Watkins v. Dudgeon*, 270 Ark. 516, 606 S.W.2d 78

(Ark. App. 1980). In this case, the probate judge found that, although the appellee had not supported or communicated with his son and by his conduct might deserve termination of his parental rights, he was unwilling to sever the appellee's parental relationship with his son. The probate judge found that the child knew of his natural father and should have the opportunity to know his natural father. Therefore, it is evident that the trial court, after observing the parties, refused to grant the adoption because he believed to do so would not be in the child's best interest, though he did grant custody to McKee.

In adoption proceedings, this Court reviews the record *de novo*, but we will not reverse the probate judge's decision unless it is clearly erroneous or against a preponderance of the evidence, after giving due regard to his opportunity to determine the credibility of the witnesses. Rule 52, ARCP; *Henson* v. *Money*, 273 Ark. 203, 617 S.W.2d 367 (1981). After reviewing the evidence as required, we cannot say that the probate judge's finding that the best interest of the child would be served by denying the adoption was clearly erroneous. As to the denial of the adoption, we affirm.

On cross-appeal, the appellee argues that the probate judge erred in granting custody of Patrick to Larry. The appellee contends that the probate judge applied the wrong burden of proof concerning custody and reversed the presumption that a child should be with his natural parent.

The paramount consideration in child custody cases must always be the welfare and best interest of the child. *Digby* v. *Digby*, 263 Ark. 813, 567 S.W.2d 290 (1978); *Daniel* v. *Daniel*, 244 Ark. 899, 428 S.W.2d 73 (1968). However, it should be noted that there is a preference for a parent above all other custodians. In *Perkins & Diggs* v. *Perkins*, 266 Ark. 957, 589 S.W.2d 588 (1979), this Court, citing *Baker* v. *Durham*, 95 Ark. 355 (1910), stated:

> . . . [A]s between the parent and the grandparent, or anyone else, the law prefers the former unless the parent is incompetent or unfit, because of his or her poverty or depravity, to provide the physical comforts

and moral training essential to the life and well being of the child. It must be an exceptional case where the evidence shows such lack of financial ability or such delinquencies in character on the part of the father as to imperil the present and future welfare of his child before a court of chancery will deprive him of the duty and privilege of maintaining and educating his child, and of the pleasure of its companionship. *See Also: Wofford* v. *Clark*, 82 Ark. 461 (1907).

After carefully reviewing the evidence, we cannot say that the probate judge's decision is clearly erroneous or against a preponderance of the evidence. In *Calhoun* v. *Calhoun*, 3 Ark. App. 270, 625 S.W.2d 545 (1981), this Court stated:

> In cases involving child custody a heavier burden is cast upon the chancellor to utilize to the fullest extent all of his powers of perception in evaluating the witnesses, their testimony and the child's best interest. This court has no such opportunity. We know of no case in which the superior position, ability and opportunity of the chancellor to observe the parties carry as great weight as one involving minor children. [citations omitted]

In the case at bar, the probate judge found that although the appellee's situation has improved, the father has not shown sufficient ability to care for his child. We do not find this statement to indicate that the trial court shifted the burden of proof to the appellee or that he ignored the presumption that a child should be with his natural parent. Instead, we find that this statement demonstrates that the trial court's overriding concern was with the child's best interest. There was a substantial amount of evidence that Patrick is happy and content in Larry's custody. We cannot find that the trial court's decision is clearly erroneous or against a preponderance of the evidence. Therefore, as to the cross-appeal, we must affirm. Rule 52, ARCP.

Affirmed.