Robert IDEKER *v.* Missy SHORT, et al.

CA 94-606                                            892 S.W.2d 278

Court of Appeals of Arkansas
Division I
Opinion delivered February 1, 1995
[Rehearing denied March 1, 1995.*]

*Dennis R. Molock*, for appellant.

*Malcolm R. Smith, P.A.*, for appellees.

*Mayfield, J., would grant rehearing.

JOHN E. JENNINGS, Chief Judge. This is a child custody case. The sole argument on appeal is that the chancellor's decision to permit primary custody of the minor child, Whitney Ideker, to remain jointly in both the maternal grandmother, Tipi Word, and the child's father, Robert Ideker, rather than to award primary custody to the father alone was clearly erroneous. We agree and reverse and remand.

On May 2, 1989, Whitney was born to Missy Short, an unmarried woman. Ms. Short immediately left the child with her mother, Tipi Word, to care for. Six months after the child's birth the appellant, Robert Ideker, filed a petition asking that his paternity be established. On February 5, 1990, an order was entered determining that Ideker was the father of the child. Soon thereafter, Ideker sought custody of the child in chancery court.

On April 19, 1990, and prior to a hearing on the merits, a settlement was reached and an agreed order was entered. The order provided in part:

1. Custody of the minor child shall be jointly held between Robert Ideker and Tipi Word.

2. Robert Ideker shall have physical custody of the minor child each week beginning Sunday after church and continuing through Wednesday night. Tipi Word shall have custody of the minor child beginning Thursday morning and extending until after church on Sunday. The child shall be delivered to Ms. Word by Mr. Ideker.

. . .

4. Ms. Short's visitation with the minor child shall occur during the periods that the minor child is with Ms. Word except for special occasions.

. . .

7. There shall be no child support payment per se, it being the express intent of the parties that each party shall provide for the minor child during his or her custodial periods. The purchase of clothing and other major items shall be made jointly.

8. In the event that Mr. Ideker's living arrangements

should change, for example, Mr. Ideker no longer residing with his parents or in the event of Mr. Ideker's marriage or when the minor child begins school, the parties agree to make a diligent good faith effort to modify the arrangements as set forth herein.

9. The parties acknowledge that it is in the minor child's best interest to implement the above described arrangements gradually. The parties shall make a diligent effort to cooperate with each other with their ultimate goal being to have the above described arrangements fully implemented on May 1, 1990.

In August 1993, appellant filed a petition seeking primary custody of his daughter. After a hearing in November 1993, the court entered an order denying the petition. The court specifically found:

1. That the joint custody arrangement in the April 19, 1990, Order has worked remarkably well for three and-a-half years and there is no reason offered why it should not continue to work.

2. That the parties live in close proximity and the evidence is that the child is very well adjusted to the arrangement.

3. It is in the best interest of the child for the present arrangement to continue, and, therefore, the Plaintiff's Petition for modification of the April 19, 1990 Order should be dismissed.

At the hearing, Robert Ideker testified that after the agreed order in 1990 he gradually increased the period of time he spent with the child over the first month or two, as he thought this would be best for the child. He was then living with his parents and testified that they were a great help to him in learning to take care of the child.

In March of 1993, Mr. Ideker married Amanda Cotton. They purchased a three bedroom home in Stuttgart. Ideker testified that the child has her own room and that she and his wife have a good relationship. He testified that the child's maternal grandmother, Mrs. Word, has taken excellent care of Whitney and that

he wants the child to continue having a relationship with both her mother and Mrs. Word. He also testified that the child was very happy and well-adjusted.

Amanda Ideker testified that she recognized the need for the child to continue to have a good relationship with her maternal grandparents.

Susie Hildebrand, a day care director in Stuttgart, testified that the child was happy and well-adjusted. Tipi Word testifed that she opposed the petition because of how well the child was doing under the joint custody arrangement. She also testified that Robert and Amanda had separated once while they were living together prior to their marriage.

In a child custody case, the chancellor's findings will not be reversed unless they are clearly erroneous or clearly against a preponderance of the evidence. Ark. R. Civ. P. 52(a); *Ketron* v. *Ketron*, 15 Ark. App. 325, 692 S.W.2d 261 (1985). We give due regard to the opportunity of the trial court to judge the credibility of the witnesses. Ark. R. Civ. P. 52(a). We give special deference to the superior position of the chancellor to determine the facts in child custody cases. *Jones* v. *Strauser*, 266 Ark. 441, 585 S.W.2d 931 (1979); *Anderson* v. *Anderson*, 43 Ark. App. 194, 863 S.W.2d 325 (1993).

The primary consideration in awarding the custody of children is the welfare and best interest of the children involved; other considerations are secondary. *Anderson* v. *Anderson, supra*; *Scherm* v. *Scherm*, 12 Ark. App. 207, 671 S.W.2d 224 (1984). The welfare of the child is the polestar in every child custody case. *Jones* v. *Strauser, supra; Hickey* v. *Hickey*, 9 Ark. App. 281, 658 S.W.2d 411 (1983). However, as between a parent and a grandparent, the law prefers the former unless the parent is incompetent or unfit. *Feight* v. *Feight*, 253 Ark. 950, 490 S.W.2d 140 (1973); *Perkins* v. *Perkins*, 266 Ark. 957, 589 S.W.2d 588 (1979); *Baker* v. *Durham*, 95 Ark. 355, 129 S.W. 789 (1910); *Hickey* v. *Hickey, supra.*

In the case at bar the agreement entered into between the maternal grandmother and the father of the child contemplated a modification of the joint custody arrangement should Mr. Ideker's living arrangements change or should he marry. Both of these

things have happened. In the case at bar the chancellor's finding that the child has adjusted very well to the joint custody arrangement is certainly supported by the evidence. We do not think that this fact alone, however, is sufficient to overcome the law's preference for the parent in a custody case.

While *Jones* v. *Strauser, supra,* bears considerable similarity to the case at bar, we find it distinguishable. There the supreme court affirmed a chancellor's decision to continue custody in the maternal grandmother, rather than award primary custody to the father. The most striking difference between *Jones* and the case at bar is that in *Jones* the natural father had abandoned the child for the first five years of her life. In the case at bar, appellant promptly sought to have his own paternity established then made reasonable efforts to establish a relationship with his daughter. Furthermore, the custody agreement in the case at bar, unlike that in *Jones*, contemplated a change in the arrangement when certain circumstances changed.

We conclude that on the facts of the case at bar the law's preference for a parent in a child custody action requires that primary custody be awarded to the father. We remand the case to the trial court to enter an order of custody. The order should provide for such reasonable visitation rights for the maternal grandparents as the chancellor may deem appropriate.

Reversed and Remanded.

ROBBINS, J., agrees. ROGERS, J., concurs.

JUDITH ROGERS, Judge, concurring. I concur in this decision because of the importance of recognizing the preference of a natural parent in custody matters and because the opinion provides encouragement for parents to take all necessary measures to complete the family unit. However, I join this decision with some misgivings because, given the chancellor's findings, this case may represent the unusual situation where the general preference favoring a natural parent may not precisely coincide with the best interest of the child.

I would encourage the chancellor to monitor the progress of this family and to provide adequate visitation of the child with appellee as is necessary to protect the child's best interest.