Charles FRESHOUR *v.* Brenda WEST and
State of Arkansas ex rel. Office of
Child Support Enforcement

CA 97-612                          962 S.W.2d 840

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered March 4, 1998
[Petition for rehearing denied April 8, 1998.]

*Mildred Havard Hansen*, for appellant.

*Gary L. Sullivan*, for appellee.

WENDELL L. GRIFFEN, Judge. Charles Freshour has appealed the decision of the Pulaski County Chancery Court that denied his motion to change custody of his minor child from her maternal grandmother. Appellant contends that the chancellor erred in maintaining custody of his child, born out of wedlock, with her legal guardian and maternal grandmother, appellee Brenda West, despite a finding that appellant was not unfit to have custody of the child. We find no error and affirm.

Appellant and the noncustodial mother, Tera West ("West"), conceived a child together when they were both 17 years old. West gave birth to Victoria West on May 11, 1993. Appellant was unsure whether he was the father of the child, and after initially visiting Victoria in the hospital at her birth, followed the advice of legal counsel who advised him against visiting the child. West lived with her mother, appellee, so after Victoria was born, West and Victoria returned home to live with appellee. Some time afterwards, appellee directed West to leave the residence because she refused to follow house rules. Victoria has remained with appellee since that time. Appellant eventually moved to Texas, studied to be a mechanic, married, and established a family life in Houston, Texas.

Meanwhile, appellee became Victoria's legal guardian pursuant to Ark. Code Ann. § 9-10-113 (Repl. 1993). She applied for and received AFDC and Medicaid benefits for Victoria. As a result, the Pulaski County Office of Child Support Enforcement (OCSE), filed a paternity action to determine whether appellant was Victoria's father. After paternity testing confirmed that appellant was Victoria's biological father, appellant filed a petition for change of custody in which he sought custody of Victoria, who was three years old when the petition was filed.

After hearings on September 27, 1996, and October 4, 1996, the chancellor ruled that although she could not find appellant either unfit or incompetent, it would be in the best interest of Victoria for her to remain in the custody of appellee. Appellant challenges that decision on appeal and argues that a decree should have been entered awarding custody to him because he is the biological parent and, therefore, preferred in the eyes of the law over all other persons, including a grandparent, unless found unfit or incompetent. *See Feight v. Feight*, 253 Ark. 950, 490 S.W.2d 140 (1973)(as between a parent and a grandparent, the law prefers the former unless the parent is incompetent or unfit); *Golden v. Golden*, 57 Ark. App. 143, 942 S.W.2d 282 (1997)(there is a preference for the parent above all other custodians); *Ideker v. Short*, 48 Ark. App. 118, 892 S.W.2d 278 (1995); *McKee v. Bates*, 10 Ark. App. 51, 661 S.W.2d 415 (1983).

In child-custody cases, a chancellor's findings will not be reversed unless they are clearly erroneous or clearly against a preponderance of the evidence. Ark. R. Civ. P. 52(a); *Ideker v. Short, supra.* We give due regard to the opportunity of the trial court to judge the credibility of the witnesses, and to the chancellor's superior position to determine the facts. *Id.* The primary consideration in child-custody cases is the welfare and best interest of the children involved; all other considerations are secondary. *Id.* The welfare of the child is the polestar in every child-custody case. *Id.*

The flaw in appellant's reasoning arises from his failure to appreciate the factors involved when a change-of-custody petition is considered. Appellant plainly sought a decision that changed custody from appellee. In deciding whether a change of custody is warranted, a chancellor must first determine whether there has been a material change in circumstances of the parties since the most recent custody decree; if material changes have occurred, the chancellor must then determine custodial placement, with the primary consideration being the best interest of the child. *Turner v. Benson*, 59 Ark. App. 108, 953 S.W.2d 596 (1997). The party seeking modification of a child-custody order has the burden of showing a material change in circumstances. *Jones v. Jones*, 326 Ark. 481, 931 S.W.2d 767 (1996).

We have no difficulty affirming the chancellor's decision because appellant failed to show a material change of circumstances to justify a change in custody. Appellee has exercised custody of Victoria most of her life since the child was born on May 11, 1993. After appellee assigned her rights to child support to the Pulaski County Child Support Enforcement Unit and alleged in a June 6, 1995, affidavit that appellant was the child's biological father, appellant denied paternity. His May 14, 1996, motion for change of custody was filed only after DNA testing had established paternity.

More important, however, is the clear evidence that appellant took virtually no interest in and provided no support, care, supervision, and protection for Victoria until the paternity action aimed at recovering the money that had been paid on Vic-

toria's behalf had been filed by the Office of Child Support Enforcement. In that regard, we note that Ark. Code Ann. § 9-10-113(c) (Repl. 1993) provides that a court may award custody of a child born out of wedlock to a biological father upon a showing that: (1) he is a fit parent to raise the child; (2) *he has assumed his responsibilities toward the child by providing care, supervision, protection, and financial support for the child*; and (3) it is in the best interest of the child to award custody to the biological father. The chancellor was clearly justified in denying appellant's motion to change custody where the proof established that he had not assumed the responsibilities specified at section 9-10-113(c)(2), even if appellant was deemed a fit parent in other respects.

■ ■ We also affirm the chancellor because her finding that it is in Victoria's best interest to remain in the custody of appellee is not clearly erroneous. Aside from the fact that appellant failed to establish a material change of circumstances to justify modifying the custody arrangement, it is fundamental that the primary consideration in child-custody cases is the welfare and best interest of the children involved; all other considerations, including the legal preference favoring biological parents over third persons, are secondary. Our appellate decisions have consistently recognized that a heavier burden is placed on a chancellor in child-custody cases to utilize, to the fullest extent, all of her powers of perception in evaluating the witnesses, their testimony, and the child's best interests, and that we know of no cases in which the superior ability, position, and opportunity of the chancellor to observe the parties carries as great a weight as those involving child custody. *Turner v. Benson, supra.*

■ These controlling principles clearly lead us to affirm the chancellor's finding that it is in Victoria's best interest that she remain in the custody of appellee. The proof shows that Victoria has lived with appellee for practically her entire life, and that she has known no other parent figure. She also has grown up with an older half-sister, unrelated to appellant, with whom she enjoys a familial bond and from whom she would be separated if appellant is granted custody. Appellee has given Victoria a home, nurture, and a sense of stability that the chancellor was entitled to consider in evaluating whether her best interest would be served by grant-

ing appellant's motion to change custody based only on his status as biological father, particularly where appellant had failed to provide those vital elements for the child's life. We decline appellant's invitation to reverse the chancellor and to hold, in effect, that his status as a biological parent trumps what is in the best interest of his four-year-old daughter.

Finally, we note that appellant emphasizes the chancellor's assessment that he is a fit person to take custody if appellee's circumstances change, and characterizes that assessment as an almost impossible hurdle that will prevent him from ever having custody of his daughter. We do not know whether appellee's circumstances will change, and neither did the chancellor. However, the chancellor was well informed about what Victoria's circumstances had been insofar as appellant was concerned. Between appellant and appellee, the proof concerning who had acted to protect and advance Victoria's best interest was clear and uncontradicted. If appellant views the chancellor's decision as a hurdle, he can remember that the chancellor decided what was in Victoria's best interest based upon proof that appellant had acted without apparent regard for her interest as long as it appeared convenient and/or financially advantageous to do so. The principle that the best interest of the child is the polestar in determining child custody disputes not only allowed the chancellor to rule as she did, it practically dictated the result that she reached when one considers how appellant had behaved concerning Victoria's best interest.

The fact that appellant was but seventeen years old when Victoria was conceived, while remarkable, is legally insignificant. Victoria was his responsibility. He left her. He cannot fault the chancellor for correctly observing that appellee has provided the care that he was obligated but refused to provide. Nor can he use his biological status as father to erase his disregard for the child's best interest by his demonstrated failure and refusal to provide for her for most of her life.

Appellee was Victoria's legal guardian, and appellant only moved for custody after OCSE sought reimbursement for public benefits paid to support Victoria. There had been no material change in circumstances that would prompt a change of custody,

as appellant had virtually abandoned the minor child until he was sought out by OCSE. However, even if a change in circumstances had been shown, the chancellor's decision that it was in the best interest of the minor child to be placed with the maternal grandmother was not clearly erroneous.

Affirmed.

AREY, STROUD, and NEAL, JJ., agree.

PITTMAN and JENNINGS, JJ., dissent.

JOHN MAUZY PITTMAN, Judge, dissenting. The question to be decided in this case is whether the circumstances were so exceptional that interests of humanity justify departure from the general rule that, as between a parent and a grandparent, the law prefers the parent unless the parent is incompetent or unfit. *See Perkins v. Perkins*, 266 Ark. 957, 589 S.W.2d 588 (1979); *compare Tidwell v. Tidwell*, 224 Ark. 819, 276 S.W.2d 697 (1955).

The majority affirms the chancellor's decision to deny appellant custody of his child by holding that there was no material change in circumstances upon which to base a change of custody. However, no change in circumstances is required when facts are presented which, although existing at the time of the original custody determination, were not then presented or considered. *Perkins v. Perkins, supra*. In the present case, the child's father was unknown at the time that appellee assumed custody.

Nor do I agree with the majority's conclusion that appellant voluntarily relinquished custody of the child to appellee by failing to perform parental duties before his paternity was established. This was an unusual case. When the child's mother and father, themselves only children, first met, the mother was pregnant with her first child. The mother was then fifteen years old. She did not know who was the father of her first child. She filed an action to establish paternity of her first child, but it was proven that the man she accused was not that child's father. The child involved in the case at bar was this teenage mother's second child. She testified that she began dating appellant on July 21, 1992, and got pregnant in August. Her relationship with appellant ended in November. I think that appellant was fully justified in having genuine doubt

about who fathered the child; consequently, the case at bar is to be distinguished from cases in which a parent voluntarily relinquished custody of his child, as was the case in *Tidwell v. Tidwell, supra,* and in *Verser v. Ford,* 37 Ark. 27 (1881). As our supreme court said in *Payne v. Jones,* 242 Ark. 686, 688-89, 415 S.W.2d 57, 58 (1967):

> To take a parent's child away from him and give it to strangers is an extreme measure — a step which the courts should and do take only when the evidence clearly justifies such a course. Here, as a practical matter, the award of custody to the appellees would in all probability deprive Kale of his child just as permanently and just as effectively as if the boy had been adopted by the Joneses. In *Woodson v. Lee,* 221 Ark. 517, 254 S.W.2d 326 (1953), we said that the right of natural parents to the custody of their children, as against strangers is "one of the highest of natural rights, and the state cannot interfere with this right simply to better the moral and temporal welfare of the child as against an unoffending parent." We also said that "abandonment by a parent, to justify in law the adoption of his child by a stranger without his consent, is conduct which evinces a settled purpose to forego all parental duties continued for a prescribed period of time when the statute so provides. Merely permitting the child to remain for a time undisturbed in the care of others is not such an abandonment."

Because there is no sound basis in the case at bar for finding that appellant knowingly abandoned his child, I respectfully dissent.

JENNINGS, J., joins in this dissent.