Heather ROBBINS *v.* STATE of Arkansas

CA 02–340                                   92 S.W.3d 707

Court of Appeals of Arkansas
Divisions IV, I, and II
Opinion delivered December 18, 2002

*Robert A. Ginnaven, III,* for appellant.

No response.

KAREN R. BAKER, Judge. Appellant, Heather Robbins, appeals from an order by the circuit court, juvenile division, placing permanent custody of her daughter, Jessika, with the child's paternal grandparents. On appeal, she argues that there was no evidence to support the court's finding that awarding custody of the juvenile to the grandparents was necessary to protect the health and safety of the juvenile. We reverse.

Appellant and her husband were separated for approximately three years, and both parties shared custody of their child, Jessika, on their own terms. Although the two had not divorced, they each maintained relationships with other people. Heather's partner was Keegan Stahl. In November 2000, Jessika's father caused the filing of a FINS petition based upon allegations by his girlfriend's sister that Keegan Stahl was sexually abusing Jessika. At an emergency hearing on November 7, 2000, the court granted temporary custody to Jessika's father. At a FINS adjudication hearing on November 16, 2000, the judge ordered that temporary custody remain with the father. At that hearing, Jessika's father testified that he had taken Jessika to the hospital when he learned of the possible sexual abuse; however, no evidence of sexual abuse was found. After an interview with a detective, Jessika's father was told that there was not enough evidence to proceed with a sexual abuse case. Heather testified at the hearing that she had previously lived with her mother, but that she had moved in with her uncle, who lived alone, the night before. She also stated that she was working at Chick-Fil-A and had been employed there about a month and a half. While in her father's custody, Jessika was taken by him to live with her paternal grandparents in Keifer, Oklahoma.

At a review hearing on August 6, 2001, the judge placed temporary custody of Jessika with her paternal grandparents. Jessika's father testified that the reason he had taken Jessika to live

with his parents was that he and his girlfriend had "gotten kicked out" of their apartment for fighting. At this same hearing, Heather testified that she and Keegan Stahl were no longer together, and he had been out of the picture since May. At the conclusion of the hearing, the trial judge stated that the reason for giving Jessika's father custody was due to the allegations of abuse by Stahl; however, that problem had remedied itself because he was no longer in the picture. Nonetheless, due to Jessika's father getting kicked out of his apartment, the trial judge placed custody with the paternal grandparents and ordered DHS to conduct a check of Heather's home, as well as Jessika's father's and the grandparents' homes.

The custody hearing was set for September 4, 2001. At that hearing, Heather testified that she had gotten her life together. She no longer had a relationship with Keegan Stahl, and she had a stable household. She also testified that she was currently living with her uncle, although she had previously moved back in with her mother again. She also had stable employment at Braum's, and she was getting a stable form of transportation that afternoon. She was fired from her previous job of cleaning houses because she did not have transportation. She acknowledged that she had not notified DHS of her latest move, but that she planned to do so in order for DHS to conduct a check of her new home per the judge's order.

Jessika's paternal grandmother testified that Jessika was living with her because Jessika's father was kicked out of his apartment; however, she was willing to let Jessika live with her. She stated that Jessika has problems with separation after her weekly visits with her mother; visitations were only allowed for one hour per week. The trial judge concluded that both of Jessika's parents lacked stability and awarded permanent custody to Jessika's paternal grandparents. Heather was given visitation every other Tuesday for two and one half hours, and each parent was ordered to pay the minimum child support. The FINS case was closed by this order.

Arkansas Code Annotated section 9-27-328(b) (Supp. 1999) provides in pertinent part that:

(b) When the court orders a juvenile removed from the custody of a parent, guardian, or custodian and placed in the custody of the department or other licensed agency responsible for the care of juveniles or with a relative or other individual, excluding commitments to youth services centers or juvenile detention facilities, the court shall make these specific findings in the order:

(1) Whether the removal of the juvenile is necessary to protect the health and safety of the juvenile, and the reasons therefor;

(2) Which family services were made available to the family before the removal of the juvenile;

(3) What efforts were made to provide those family services relevant to the needs of the family before the removal of the juvenile, taking into consideration whether or not the juvenile could safely remain at home while family services were provided;

(4) Why efforts made to provide the family services described did not prevent the removal of the juvenile;

(5) Whether efforts made to prevent the removal of the juvenile were reasonable, based upon the needs of the family and the juvenile; and

(6) Whether the removal is in the best interest of the juvenile.

In the case before us, the trial judge's order consisted of the following written findings:

[P]lacement of Jessika Robbins, dob 4/14/97, with her grandparents, Kathy and Steve Robbins, was necessary to protect the health and safety of the juvenile due to both parents' instability. The Court further finds the following: that DHS provided services to the family before custody was placed with the grandparents, that DHS was ordered to visit the mother's home before this review hearing but mother had moved three days before the review and did not notify DHS to enable the department to visit her home; that the efforts of DHS were reasonable; that due to the instability of both parents and the lack of a home study on mother's home due to mother's failure to advise DHS, placement of custody of the juvenile with the grandparents is in the best interest of the juvenile.

It is clear from the order on its face that the trial judge failed to make the written findings required by the statute. Further, the evidence in the case does not support the findings that were made in the order. First, there is no evidence as to the rea-

sons why it was necessary to remove Jessika in order to protect her health and safety. Second, there is no evidence of services offered to the family. There is no evidence of any assistance in areas such as job placement, housing, or transportation. Consequently, there was no evidence of why those services failed or the reasonableness of any services provided. The mother in this case was initially deprived of custody due to the allegation of sexual abuse of Jessika by her boyfriend. This allegation was never proven. The "lack of stability" relied on by the trial judge in her findings is apparently a reference to the fact that the mother had changed jobs and residences; however, the State saw no need to deprive her of the custody of her other infant daughter, Jessika's half-sibling, due to health and safety issues. Thus, even if the trial judge had made the written findings required by the statute, there is no evidence to support those findings.

The order appealed from in this case is an order granting permanent custody to a third party. This is evident from the trial judge's award of permanent custody, visitation, and child support, and her closing of the FINS case.[1] Awarding permanent custody to a third party is analogous to a permanent guardianship. As a general rule, there must be a finding of unfitness of the natural parents in order to give custody to a third party. *See Schuh v. Roberson,* 302 Ark. 305, 788 S.W.2d 740 (1990); *Greening v. Newman,* 6 Ark. App. 261, 640 S.W.2d 463 (1982); *Parks v. Crowley,* 221 Ark. 340, 253 S.W.2d 561 (1952).

It is well settled that our law establishes a preference for the natural parent in third-party custody cases and that preference must prevail unless it is established that the natural parent is unfit. *See Schuh, supra; Stamps v. Rawlins,* 297 Ark. 370, 761 S.W.2d 933 (1988); *Perkins v. Perkins,* 266 Ark. 957, 589 S.W.2d 588 (1979); *Greening, supra.* This preference applies in guardianship cases as well. *See Blunt v. Cartwright,* 342 Ark. 662, 30 S.W.3d 737 (2000) (holding that a preference in Ark. Code Ann. § 28-65-204 (Supp.

---

[1] This is further evident from the State's letter, as the adversarial party, to the trial judge. The letter stated that it is "the position of our office that the Prosecutor's Office has no stake in the outcome of the appeal and expresses no opinion as to who should have custody of the minor child. Therefore we will not be filing a brief on the issue."

2001) is given to the natural parent if that parent is determined to be suitable and qualified by the probate court).

■ In *Schuh*, our supreme court reversed the decision of the trial judge in the absence of a finding that the mother was an unfit parent and, on remand, directed the trial court to the very section of the statute that is at issue in the case before us, making it clear that there must first be a finding of unfitness of the natural parents before awarding permanent custody to a third party. Generally, the prime concern and controlling factor in child custody cases is the best interest of the child. *Schuh, supra,* (citing *Tucker v. Tucker,* 207 Ark. 359, 180 S.W.2d 571 (1944); *Jones v. Jones,* 13 Ark. App. 102, 680 S.W.2d 118 (1984)). When a third person seeks to deprive a parent of custody, she cannot do so without first proving that the parent is not a suitable person to have the child. *Id.* (citing *Riley v. Vest,* 235 Ark. 192, 357 S.W.2d 497 (1962)). There was no finding in this case that Jessika's natural parents were unfit; moreover, no such finding could be supported by the evidence in this case.

In *Schuh*, our supreme court stated that:

> The law recognizes the preferential rights of parents to their children over relatives and strangers, and where not detrimental to the welfare of the children, they are paramount, and will be respected, unless special circumstances demand that such rights be ignored. . . . Courts are very reluctant to take from the natural parents the custody of their child, and will not do so unless the parents have manifested such indifference to its welfare as indicates a lack of intention to discharge the duties imposed by the laws of nature and of the state to their offspring suitable to their station in life.

*Schuh*, 302 Ark. at 307, 788 S.W.2d at 741 (quoting *Parks v. Crowley*, 221 Ark. 340, 253 S.W.2d 561 (1952) (citations omitted)).

■ The findings required by Arkansas Code Annotated section 9-27-328(b) (Supp. 1999) were not made by the trial judge in this case and could not be supported by the evidence. Further, when permanent custody is granted to a third party, there must be a finding of unfitness as to the natural parents.

Because these required findings were not made and the record will not support such findings, we must reverse.

HART, JENNINGS, and VAUGHT, JJ., agree.

NEAL and ROAF, JJ., concur.

STROUD, C.J., and GRIFFEN and CRABTREE, JJ., dissent.

OLLY NEAL, Judge, concurring. I concur in reversing this case because the record before us does not support the trial court's findings. I also agree that the trial court erred when it placed permanent custody with the paternal grandparents. However, I write separately because I do not believe that Ark. Code Ann. § 9-27-328 requires a finding of unfitness of the natural parent prior to giving custody of a child involved in a FINS to a third party. Furthermore, I disagree with the dissent's contention that we can correct the trial court's error in placing permanent custody with the paternal grandparents by simply modifying the court's order to say that the grandparents merely have temporary custody.

I am authorized to state that Judge ROAF joins me in this concurring opinion.

WENDELL L. GRIFFEN, Judge, dissenting. I would affirm the trial court's order placing custody of the minor daughter of appellant with the child's paternal grandparents, Kathy and Steve Robbins, because the record before us contains proof that adequately supports the findings made by the trial court that the custody change was necessary to protect the health and safety of the child. The trial court's conclusion that there was instability in the lives of both parents that was contrary to the best interests of their daughter is fully supported by the record. Moreover, contrary to appellant's argument on appeal, lack of parental stability does impact the health and safety of a child. *Cf. Freshour v. West*, 61 Ark. App. 60, 962 S.W.2d 840 (1998) (discussing sense of stability as a vital element for the child's life to be considered as a factor). The best interest of the child is the overriding concern for deciding cases involving allegations of child abuse. *See Johnston v. Arkansas Dep't of Human Servs.*, 55 Ark. App. 392, 935 S.W.2d 589 (1996) (holding chancellor's findings concerning best interest

of children in dependency-neglect case not clearly erroneous). Here, the record fully shows that the unstable existence to which appellant subjected her daughter was contrary to her best interest, as found by the trial court.

Unlike Judge BAKER, I find nothing flawed from the fact that the trial court did not find appellant an unfit parent. However, I agree that the trial court erred when it awarded permanent custody to the grandparents. Therefore, I would modify that portion of the trial court's order, direct that court to retain jurisdiction of the FINS case, and order the Department of Human Services to undertake a home study of the grandparents' residence and provide such additional family services to appellant as deemed appropriate.

Arkansas Code Annotated section 9-27-328(b) (Supp. 1999), the statutory authority upon which the trial court's order was taken, states:

> (a) Before a juvenile court may order any dependent-neglected juvenile or family in need of services juvenile removed from the custody of his or her parent, guardian, or custodian and placed with the Department of Human Services or other licensed agency responsible for the care of juveniles or with a relative or other individual, the court shall order family services appropriate to prevent removal unless the health and safety of the juvenile warrant immediate removal for the protection of the juvenile.

> (b) When the court orders a juvenile removed from the custody of a parent, guardian, or custodian and placed in the custody of the department or other licensed agency responsible for the care of juveniles or with a relative or other individual, excluding commitments to youth services centers or juvenile detention facilities, the court shall make these specific findings in the order:

> (1) Whether the removal of the juvenile is necessary to protect the health and safety of the juvenile, and the reasons therefor;

> (2) Which family services were made available to the family before the removal of the juvenile;

> (3) What efforts were made to provide those family services relevant to the needs of the family before the removal of the juvenile, taking into consideration whether or not the juvenile could safely remain at home while family services were provided;

(4) Why efforts made to provide the family services described did not prevent the removal of the juvenile;

(5) Whether efforts made to prevent the removal of the juvenile were reasonable, based upon the needs of the family and the juvenile; and

(6) Whether the removal is in the best interest of the juvenile.

Contrary to the view asserted in the majority opinion, the record contains the findings required by this statute, and those findings are supported by the evidence presented to the trial court. In addition to the findings recited by the majority opinion and found in the trial court's written order, the trial court made the following comments from the bench at the conclusion of the September 4, 2001, custody hearing:

> I ordered the caseworker to go out and make a home study on the parents and do all these things, and it's very difficult for me to make a decision when now we have the hearing that both parents knew about, when the mother testified that she's now living in a new place, she's now employed by a new employer, and these changes have taken place very recently, and the DHS caseworker was not informed by the mother of those changes, and we do not have any sort of home reports on the changed position of the mother. I think the statute is clear, and I think the history of this case has been a very rocky one. I had serious concerns about [the minor] having contact with Keegan Stahl, and that apparently has remedied itself because Mr. Stahl is no longer in the picture with Mom. However, we still have a situation where neither parent has really shown stability at this point, and I totally agree with the grandmother that [the minor] needs stability . . . . And at this time I find that . . . [she] is not getting that with either parent. I find that previous services have been made available through the Department. We have a FINS—we had a caseworker working this case. I ordered DHS to do very specific things, but we still don't have the stability by either of the parents. I find that it's in the best interest of [the minor] for custody to continue with Ms. Kathy Robbins and Mr. Steve Robbins, the paternal grandparents. I find that in light of the instability of the situation, the fact that Mom has now moved again, has a new job, we don't have DHS reports on that. Dad is living with a girl-friend. He's still not divorced from his first wife, and I believe for a long time he and Ms. Heather were . . . married but living with

different people and not divorced yet, but I think that situation has been taken care of. That the situation of Dad is that he was living with his — I guess it would be his wife. They got into it to the point that they got kicked out of their apartment. They show up. Dad had custody of [the minor]. They show up at his mom and dad's house, and [the minor] has been living with them since April. That was due to Dad's instability. So I find that it's in the best interest of [the minor] that custody be placed with the grandparents, that she needs stability, she's getting counseling services which she will continue to receive, and that custody be with the paternal grandparents, . . .

I am going to order that the FINS case. be closed, that either parent can certainly petition that the Court re-open the case to consider a modification once either parent stabilizes, . . . If they wish to have the case re-opened, they can file a petition and it will be re-opened.

Subsection (1) of Ark. Code Ann. § 9-27-328(b) was satisfied by the proven instability of both parents mentioned by the trial court in her bench comments. Subsections (2) through (5) were satisfied by the statement in the trial court's order that "DHS provided services to the family before custody was placed with the grandparents, that DHS was ordered to visit the mother's home before this review hearing but mother had moved three days before the review and did not notify DHS to enable the department to review her home." Subsection (6) was satisfied by the finding that "due to the instability of both parents and the lack of a home study on the mother's home due to mother's failure to advise DHS, placement of custody of the juvenile with the grandparents is in the best interest of the juvenile."

The record fully supports the trial court's written findings and bench comments concerning the unstable situation that this child experienced while in the custody of her parents. Appellant testified at the September 4, 2001, review hearing in this family-in-need of services case that she had "stable employment and a stable household." On cross examination she disclosed that she moved from living with her parents into a trailer occupied by her uncle three days before the September 4, 2001, hearing. She had not informed her DHS caseworker about the address change. She

changed jobs but did not inform the caseworker about her job change, or that she had been fired from a previous job. She admitted that her uncle was "not a very clean person" and "I was getting his place all cleaned up." Yet she never told her caseworker she had moved from living with her parents, let alone where the uncle's trailer was located so it could be checked after she cleaned it. In the face of this instability, appellant testified "I am wanting [the minor] today."

At no point does Ark. Code Ann. § 9-27-328 require a finding that a parent is unfit before a juvenile can be ordered removed from the custody of that parent and placed "with a relative or other individual." That omission is more than incidental. The Arkansas General Assembly enacted the statute with at least constructive knowledge of the case law cited in the majority opinion. Furthermore, not only does the record before us support the trial court's findings of parental instability that adversely affected the minor's health and safety, but appellant does not allege the absence of an unfitness finding as a point of error in her brief and failed to raise this argument before the trial court. It is well settled that we do not entertain arguments on appeal that were not raised below. *See, e.g., Cross v. Crawford County Mem'l Hosp.*, 54 Ark. App. 130, 923 S.W.2d 886 (1996).

However, I agree that the trial court erred when it placed permanent custody of appellant's minor child with the child's paternal grandparents and closed the FINS case. My position in that regard has nothing to do with the notion that appellant needed to be established an unfit parent in order for custody to be removed pursuant to Ark. Code Ann. § 9-27-328(b) (Supp. 1999). As previously mentioned, that statute does not require a showing of parental unfitness before a court may order a juvenile removed from the custody of a parent. Nevertheless, it was error for the trial court to declare that permanent custody of the juvenile would rest with the grandparents and close the FINS case. We need not reverse the trial court in order to correct that flaw in its judgment, but should modify it by declaring the grandparents to exercise temporary custody. This modification fully addresses the concern about the error in making a permanent custody award as well as the unfitness concern.

In summary, the trial court made the findings required by Ark. Code Ann. § 9-27-328. Those findings are adequately supported by the record. Not only did appellant fail to object (either at trial or by an allegation of error on appeal) to the trial court's failure to find her an unfit parent when it decided to remove the child from her custody and place her in the custody of the child's paternal grandparents, the statute does not require a finding of parental unfitness before a trial court can order a juvenile removed from the custody of a parent and placed with a relative or another person. Aside from modifying the trial court's judgment that permanent custody of the child be with the paternal grandparents and that the FINS case be closed, I would affirm the result· below under our "clearly erroneous" standard.

I am authorized to state that Chief Judge STROUD and Judge CRABTREE join in this dissent.