2011 Ark. 370

Jamie R. MAHONE, Appellant

v.

ARKANSAS DEPARTMENT OF HUMAN SERVICES, and Minor Children, Appellees.

No. 10–1283.

Supreme Court of Arkansas.

Sept. 22, 2011.

Leah Lanford, Arkansas Public Defender Commission, for appellant.

Tabitha McNulty, Arkansas Department of Human Services, for appellee.

JIM HANNAH, Chief Justice.

Appellant Jamie Mahone, father of T.M. and K.M., appeals the Washington County Circuit Court's permanency-planning order of April 7, 2010, in this dependency-neglect case. In the order, the circuit court awarded permanent custody of the children to their maternal grandmother, Teresa Taylor, and awarded standard visitation to Mahone. The court of appeals previously affirmed the circuit court's decision. *Mahone v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 819, 2010 WL 4983009. Subsequently, this court granted Mahone's petition for review. Upon the grant of a petition for review, we consider the case as though it had been originally filed in this court. *E.g., Powell v. Lane,* 375 Ark. 178, 289 S.W.3d 440 (2008). On appeal, Mahone contends that the circuit court erred in using the sibling-separation concept applicable in domestic-relations cases rather than applying the preferred goals set forth in Arkansas Code Annotated section 9–27–338 (Repl.2009). He further contends that, even if the circuit court had properly used concepts from domestic-relations cases, the circuit court erred in interpreting those concepts and should have awarded custody to him. We reverse and remand the circuit court's order and vacate the opinion of the court of appeals.

The Arkansas Department of Human Services removed a son, T.M., born on November 10, 1997, and a daughter, K.M., born on November 17, 2000, from the custody of their mother, Faith Randolph, on December 2, 2008, after she was arrested for cocaine possession. On December 11, 2008, the circuit court entered a probable-cause order placing custody of T.M. and K.M. with their maternal grandmother, Teresa Taylor. The children's two-year-old half-brother, D.R., was also placed with Taylor.[1] On February 19, 2009, the circuit court entered an adjudication and disposition order, finding that the children were dependent-neglected due to the actions of their mother and, after conducting a home study of Mahone's home, allowing Mahone

---

1. Mahone is not the father of D.R., and D.R. is not a subject of this appeal.

to continue having unsupervised visitation with T.M. and K.M. Randolph was granted supervised visitation of her three children in Taylor's home. The circuit court set reunification with the children's mother or father as the goal of the case.

In a permanency-planning hearing order entered November 18, 2009, the circuit court changed the goal of the case to termination of Randolph's rights to all three of her children and continued the goal of reunification with Mahone for T.M. and K.M. The circuit court recognized that, while Mahone was in compliance with some of the orders, he had not called DHS every Friday or called the children's counselor as ordered. The circuit court noted that Mahone had submitted to and passed all random drug screens and that his visits with the |₃children had gone well. The circuit court ordered that custody of the children remain with Taylor at that time and that reunification with Mahone would be reevaluated in three months. DHS later filed a petition for termination of the parental rights of Randolph and Anthony Price, D.R.'s father.

At the hearing on March 19, 2010, DHS recommended placement with Mahone, and the attorney ad litem recommended placement with Taylor. In a permanency plan entered April 7, 2010, the circuit court placed permanent custody of the children with Taylor and continued standard visitation with Mahone. In addition to the standard visitation, the court ordered that Mahone would get "first choice" regarding whether the children would be with him on "snow days" if he was off work. The circuit court also provided that Mahone and Taylor could arrange for additional visits. Mahone now brings this appeal.

Mahone contends that the circuit court erred by basing its decision on the goal of

not separating siblings rather than by applying the preferred goals set forth in Arkansas Code Annotated section 9–27–338(c). We first consider the statutory preferences. Subsection 338(c) provides that "based upon the facts of the case, the circuit court shall enter one (1) of the following permanency planning goals, listed in order of preference, in accordance with the best interest of the juvenile." The first and fifth goals are relevant to this case. The first goal listed is "[r]eturning the juvenile to the parent . . . if it is in the best interest of the juvenile and the juvenile's health and safety can be adequately safeguarded if returned home." Ark.Code Ann. § 9–27–338(c)(1). The fifth goal listed is "[a]uthorizing a plan to obtain a permanent custodian, including permanent custody with a fit and willing relative." Ark.Code |₄Ann. § 9–27–338(c)(5).

Mahone asserts that reunification with him was the first preference set forth in the statute and that, because he was fit to take his children, the circuit court erred in choosing the fifth preference listed, "a fit and willing relative," on the basis of its desire not to separate his children from their half-sibling, D.R. In response, T.M. and K.M. contend that the first statutory preference is not applicable in this case because the preference of "[r]eturning the child to the parent" does not include awarding custody of the child to a noncustodial parent with whom the child was not living at the time of the removal.

The interpretation asserted by T.M. and K.M. would lead to an absurd result because a nonoffending, noncustodial parent would be excluded from consideration under the first preference and instead considered under the fifth preference, which is afforded to a "fit and willing relative."[2] We hold that the first

2. The juvenile code defines "relative" as "a

person within the fifth degree of kinship by

statutory preference applies to Mahone because he is a parent of the children. We note that in *Judkins v. Duvall*, 97 Ark.App. 260, 265, 248 S.W.3d 492, 496 (2007), the court of appeals stated that the first preference in the statute was to return the child to the parent "from whom he had been taken." The court of appeals erred in its interpretation of the statute because the phrase "from whom he had been taken" is not included in the statute. In construing statutes, this court will not add words to a statute to convey a meaning that is not there. *E.g., Kildow v. Baldwin Piano & Organ*, 333 Ark. 335, 969 S.W.2d 190 (1998). Given this state's strong public policy in favor of awarding custody to a parent over a third party, we do not believe the General Assembly intended to limit the first statutory preference to a parent from whom a child had been taken. Rather, we believe the legislature intended that both parents be given the benefit of the first statutory preference. To the extent that *Judkins* is inconsistent with today's opinion, we overrule it.

■ We now turn to Mahone's assertion that the circuit court erred in using the sibling-separation concept applicable in domestic-relations cases rather than applying the preferred goals set forth in section 9–27–338. Upon review of the order, it is apparent that the primary basis for the circuit court's decision to place T.M. and K.M. with their grandmother was to avoid separating them from their half-sibling, D.R. Further, we are not convinced that, when conducting the best-interest analysis, the circuit court applied the statutory preference afforded to parents.[3] As such, we cannot be assured that if it had applied that preference, the circuit court would have ruled the way it did. Accordingly, we reverse and remand to the circuit court.[4]

■ On a final note, we are aware that in his petition for review, Mahone contended that the award of custody to the children's grandmother violated his constitutional rights. Specifically, he asserted that, as a parent who has demonstrated a sufficient commitment to his children, he has a protected liberty interest to raise his children without government interference.[5] Mahone did not develop an argument on the constitutional issue before the circuit court, nor did he obtain a ruling on the issue from the circuit court. Moreover, Mahone did not raise the issue in his brief on appeal. Accordingly, we will not address Mahone's constitutional argument.

Reversed and remanded.

BAKER, J., concurring in part, dissenting in part.

KAREN R. BAKER, Justice, concurring in part and dissenting in part.

I agree with the majority that the first statutory preference outlined in Ark.Code

virtue of blood or adoption." Ark.Code Ann. § 9–28–402(18) (Repl.2009).

3. The concurrence in part, dissent in part erroneously states, "The trial court made a finding that Mahone and the grandmother, Teresa Taylor, were equally fit to have custody of these children.... With this finding of fact, the question of the best interests of the children is no longer before the court." A review of the record in its entirety reveals no such finding.

4. We are mindful that the circuit court entered its order some seventeen months ago. We understand that, upon remand, it may be necessary to reassess the status of each party.

5. The concurrence in part, dissent in part is premised on United States Supreme Court case law regarding the fitness of a parent. As previously noted, the circuit court made no finding of fitness. And, again, the constitutional issues are not before this court.

Ann. Section 9–27–338(c)(Repl.2009) applies to Mahone as he is a "parent" under the definition of Ark.Code Ann. section 9–27–303(40)(Repl.2009). I write separately because I would not remand this case to the trial court.

The United States Supreme Court has stated that it is a fundamental right to parent a child without interference by the state. *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). As I outlined in my dissent in *Bethany v. Jones*, 2011 Ark. 67, 378 S.W.3d 731, before the state may intervene there must be a showing of unfitness on the part of the parent. Without a specific showing of unfitness, there is a legal presumption that actions of a parent are in the best interest of the child. *Troxel*, 530 U.S. at 66, 120 S.Ct. 2054.

Further, individualized assessment of each parent is necessary to prevent the arbitrary and unjustified interference with a parent's fundamental right to raise their child as they see fit. *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). One parent's actions should not negate the constitutional rights of the other. *Id.* Mahone was not found unfit at the time of the permanency hearing.[1]

On the contrary, Mahone was found to be fit and was in substantial compliance with the permanency plan. Specifically, the trial judge found that the children would be safe in Mahone's home, that the trial judge wished that the children's stepmother was their biological mother, and that Mahone was a father who had "stepped up to the plate" for the children. The Department of Human Services requested that the children be permanently placed with Mahone and joined in Mahone's arguments on appeal.

The majority holds that we cannot be assured that the circuit court would have ruled the way it did had it applied the statutory preference afforded parents and that the appropriate remedy is to remand the case for the trial court to re-evaluate the parties with a new best-interest analysis applying the proper preference. I disagree.

The trial court made a finding that Mahone and the grandmother, Teresa Taylor, were equally fit to have custody of these children. This finding of fact is neither clear error nor against the preponderance of the evidence. With this finding of fact, the question of the best interests of the children is no longer before the court. The matter in question is simply what preference Mahone should have as a legal parent under Ark.Code Ann. section 9–27–338(c). This is a matter of law, and should be decided by this court.

The majority opinion seems to hold that part of the reason for the remand is that circumstances may have changed during the seventeen months that this matter has been pending such that a reassessment of the parties comparative fitness is necessary. This is wrong. This case is finished. If circumstances have developed such that the children are in danger with their father, a new petition may be filed by the Arkansas Department of Human Services based on those circumstances.

---

1. While the majority opinion is correct that the trial judge based her opinion on the fact that the siblings would be separated, this was not the sole reason for her decision, as the majority states. The record reflects that the trial judge based her ruling on not only the sibling separation, but also on facts that preceded the finding of dependent neglect; the fact that T.M. had been in foster care a very short time while Mahone was living with him and his mother and the fact that Mahone had children with two different women at roughly the same time.

Furthermore, while the majority is correct in noting that Mahone's constitutional issues were not preserved for appeal, it is worth noting that, as read by the trial court and the Arkansas Court of Appeals, Ark.Code Ann. section 9–27–338(c) is unconstitutional. The statute, in pertinent part, reads:

> At the permanency planning hearing, based upon the facts of the case, the circuit court shall enter one (1) of the following permanency goals, listed in order of preference, in accordance with the best interest of the juvenile:

> (1) Returning the juvenile to the parent, guardian, or custodian at the permanency planning hearing if it is in the best interest of the juvenile and the juvenile's health and safety can be adequately safeguarded if returned home.

As shown above, use of the word "return" infringes on the fundamental parental rights of a fit noncustodial parent. Further, placement of "in accordance with the best interest of the juvenile" prior to subsection (1) indicates that the judge has the right to choose outright which of the 6 permanency goals to set, instead of proceeding through each in order of preference to determine if the placement meets the goals. As the wording of the statute has caused some confusion among the courts, the General Assembly should examine this part of ⌊₉the juvenile code to clarify the statute.