2011 Ark. App. 748

Edward GLOVER, Sr., Appellant

v.

ARKANSAS DEPARTMENT OF HUMAN SERVICES, Appellee.

No. CA 11–508.

Court of Appeals of Arkansas.

Dec. 7, 2011.

Leah Beth Lanford, for appellant.

Tabitha Baertels McNulty and Melissa Bristow Richardson, for appellee.

JOHN MAUZY PITTMAN, Judge.

This is an appeal from a February 2011 order terminating appellant's parental rights to his minor child, E.G., born No-

vember 21, 2008. Appellant's counsel has filed a no-merit brief pursuant to *Linker–Flores v. Arkansas Department of Human Services,* 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6–9(i), asserting that there are no issues of arguable merit to support the appeal and requesting to be relieved as counsel. The motion is accompanied by an abstract and addendum of the proceedings below and a brief explaining why none of the trial court's rulings present a meritorious ground for appeal. The clerk of this court sent by certified mail copies of the motion and the abstract, brief, and addendum to appellant's last known address, informing him that he had the right to file pro se points for reversal under Ark. Sup.Ct. R. 6–9(i)(3). Appellant filed no statement of points.

The record shows that the child was removed from the custody of appellant's wife because of severe physical abuse at the age of five months, when appellant was performing military service and not present in the home. The parental rights of appellant's wife were terminated. Appellant returned from Iraq and was in Kentucky for eighteen months prior to the termination hearing. Appellant was ordered to obtain a psychological examination, complete parenting classes, complete anger-management classes, submit to a drug and alcohol assessment, participate in random drug screens and DNA testing, and maintain stable employment and housing. The Department of Human Services made referrals to services, but appellant failed to participate in any of them and remained noncompliant until the termination hearing, when his attorney asked that he be given additional time.

The dissenting judge's passionate outrage is noteworthy, but the fact remains that none of the issues that she identifies were raised or developed by appellant [1] at the termination hearing or anywhere else. Despite her suggestion to the contrary, this is not a matter of subject-matter jurisdiction that may be raised for the first time on direct appeal. *See Porter v. Arkansas Department of Health & Human Services,* 374 Ark. 177, 286 S.W.3d 686 (2008); *Arkansas Department of Human Services v. Circuit Court of Sebastian County,* 363 Ark. 389, 214 S.W.3d 856 (2005); *Banning v. State,* 22 Ark.App. 144, 737 S.W.2d 167 (1987).

Based on our examination of the record and the brief presented to us, we find that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit motions in termination cases, and we hold that the appeal is wholly without merit. Consequently, we grant counsel's motion to withdraw and affirm the order terminating appellant's parental rights.

Affirmed; motion to withdraw granted.

GLADWIN, ROBBINS, WYNNE, and GLOVER, JJ., agree.

HART, J., dissents.

JOSEPHINE LINKER HART, Judge, dissenting.

This case involves the termination of a nonoffending father's right to parent his child. The majority's perfunctory opinion as well as the trial judge's announcement from the bench that this case was a "no-brainer," evidence the lack of examination

---

1. Appellant was represented by counsel for several months prior to the termination order, including at the termination hearing. At no time during the termination hearing did appellant's attorney argue that the services appellant agreed to perform were improperly imposed; he simply asked that appellant be given additional time to complete those services.

given to this case. Both are testimony to the judiciary's failure to acknowledge Mr. Glover's fundamental constitutional right to parent his child. The system, and ultimately the court of appeals, has failed Mr. Glover, and more importantly, his child.

This case was filed in a no-merit format as authorized by the supreme court in *Linker–Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6–9(i). No-merit cases are only proper when filing a merit brief would be "wholly frivolous." *Tenny v. Arkansas Dep't of Human Servs.*, 2011 Ark. App. 360, 383 S.W.3d 876. I contend that a merit brief in this case is required because the State wholly lacked authority to order Mr. Glover to participate in what the court called "services," or even to withhold custody of E.G. from him.

The majority correctly states that E.G. was born November 21, 2008, and was taken into ADHS custody because he was abused by Maliki Raheem, the boyfriend of the child's mother, while Mr. Glover was serving with the United States Army in Iraq. The majority's opinion, however, ignores the trial court's express finding that Mr. Glover had not abused his child and was in no way responsible. Mr. Glover is the quintessential nonoffending parent; he was more than 4000 miles away when the abuse took place. While it is true that Mr. Glover failed to "participate" in the "services" that the trial court ordered ADHS to provide, that is hardly the end of the story. As they say, the devil is in the details.

The abuse of E.G. was discovered on April 30, 2009. Although it was determined that Raheem was the abuser, Michelle Glover knew of Raheem's history of domestic violence, yet chose to discount it.

The abuse was severe: E.G. had scalding on his chest and abdomen, bruising, blood inside his eyes, head injuries, perforation of his stomach, a liver contusion, three rib fractures, bilateral retinal hemorrhages, bruising around the eyes and scalp consistent with trauma, a possible lung contusion, and burns to the abdomen, shoulder, right thigh, and left scrotum.

When Mr. Glover learned of his child's condition, he obtained emergency leave in Iraq and arrived in Arkansas on May 10, 2009. He was required to return to Iraq on May 24. In the meantime, he attended the probable-cause hearing on May 18, 2009. While Michelle was represented by appointed counsel, Mr. Glover was not. The probable-cause order specifically stated that Glover did not "qualify" for appointed counsel because "custody was not removed from the father." Nonetheless, Glover signed an order agreeing to appear for the July 6, 2009 adjudication hearing. He was ordered to accept the following "services," which were checked off on the pre-printed, probable-cause-order form that was commonly used in this case:

– provide vital info for fetal alcohol syndrome assessment
– pay child support
– attend staffings at ADHS
– cooperate with Department
– maintain contact with Department
– complete affidavit of Financial Means
– refrain from criminal or illegal activity

One thing is apparent from this list of court-ordered "services": not a single one acknowledges that Mr. Glover was a nonoffending parent—indeed, it challenges one's imagination to conceive of what "services" ADHS could provide a fit parent who has done nothing to land his child in the custody of the State.[1]

---

1. The problem with the use of these check-list orders is best illustrated by the fact that the

On July 6, 2009, and July 17, 2009, an adjudication hearing was held. Mr. Glover was still serving his country in Iraq and did not attend the hearing. Again, he was not represented by counsel. Nonetheless, the court found that "The Biological Father was in Iraq when the injuries occurred and has nothing to do with the current status and cannot be here because of his deployment." The trial court checked off the same "services" for Mr. Glover that it had in the probable-cause order.

On October 28, 2009, a review hearing was held. Mr. Glover was still in Iraq and neither attended the hearing nor was represented by counsel. Special Judge Butch Hale, the second of what would ultimately be four different trial judges assigned to this case, checked off additional court-ordered services:

- provide complete medical history for juvenile
- parenting classes
- anger management classes
- forensic psychological evaluation—follow recommendations
- random drug screens
- remain drug free
- remain alcohol free
- drug and alcohol assessment—follow recommendations
- medication assessment and follow recommendations
- maintain stable and suitable housing
- attend visitation with juvenile
- demonstrate improved parenting
- maintain reliable transportation or seek reasonable assistance from DHS

In addition to these items, even though Mr. Glover was married to E.G.'s mother

court ordered the "Juvenile" to "Refrain from criminal or illegal activity." At the time the order was entered, E.G. was just eight months

throughout this case, the trial court ordered Mr. Glover to submit to DNA testing to determine the paternity of the child. He was also ordered to submit to a forensic psychological evaluation and keep ADHS informed of his address so that he could be served with a TPR petition. At no time did the court give any reason for requiring the check-listed items for the nonoffending parent, or any direction on how these services would be provided by ADHS. Inexplicably, the special judge failed to check off the requirement that Mr. Glover pay child support. Nonetheless, even though there was no evidence of Mr. Glover doing or failing to do anything in this case, the order specifically found "Biological Father was compliant." It made a similar finding for ADHS, even though there was likewise no evidence that it had done anything to assist Mr. Glover.

A permanency-planning hearing was scheduled for April 28, 2010. Mr. Glover appeared at that hearing, but again, he was not represented by counsel. Prior to the hearing, he submitted to a drug screen, even though there was never an allegation of substance abuse on his part. The test was negative. Judge Melinda Gilbert's return to the case brought still more checks on the pre-printed, permanency-planning order. Mr. Glover was now ordered to

- provide complete medical history for juvenile
- parenting classes
- anger management classes
- forensic psychological evaluation—follow recommendations
- random drug screens
- remain drug free
- remain alcohol free

old. Happily, the court found E.G. "compliant" throughout this case.

– provide vital info for fetal alcohol syndrome assessment

– drug and alcohol assessment—follow recommendations

– medication assessment and follow recommendations

– maintain stable and suitable housing

– attend staffings at DHS

– cooperate with Department

– maintain contact with Department

– attend visitation with juvenile

– demonstrate improved parenting

– maintain reliable transportation or seek reasonable assistance from DHS

– complete affidavit of Financial Means

– refrain from criminal or illegal activity

This is quite a list of requirements for a nonoffending parent. The trial court reinstated the requirement that Mr. Glover pay support,[2] as well as provide copies of his Army discharge documents and submit to DNA testing. For the first time in the case, Mr. Glover was found to not be "compliant," while ADHS was found to be "compliant." Nothing had changed regarding either party as far as the case plan was concerned. However, by this time, Mr. Glover had separated from the Army and planned to live in Kentucky, where he was employed. The trial court noted that Mr. Glover wanted E.G. to come live with him in Kentucky if E.G. were not reunited with his mother.

Meanwhile, Michelle Glover's parental rights were terminated. On October 4, 2010, another hearing was held before yet another judge. This was a permanency-planning hearing. By this time, Mr. Glover had appointed counsel, who attended in his absence. The quality of the appointed counsel's representation at this late stage of the case supports an inference that the purpose of the appointment was not to assist Mr. Glover in negotiating his way through the juvenile courts to gain custody of E.G., but rather to facilitate his exit by terminating his parental rights. The new judge, Wayne Gruber, found Mr. Glover to be "noncompliant" and suspended his visitation.

On December 30, 2010, Mr. Glover moved from Kentucky to Arkansas. Because all of the "services" were "offered" in Arkansas, this was the first time that it was practical for Mr. Glover to accept these services. Again, it is questionable whether any of these "services" could do anything at all to "remedy" the reason for E.G. being taken into ADHS custody. That reason, of course, was the criminal battery of the child by a person who was engaged in an adulterous relationship with the child's mother while Mr. Glover was deployed more than 4000 miles away in the armed forces of this country.

Nonetheless, the case proceeded to a hearing for the termination of Mr. Glover's parental rights. At the hearing, presided over by a new judge, Mr. Glover expressed the willingness to do what was necessary to take custody of his son. He was not employed at the time, having just left the hospital after being treated for a colon malady. This was the first hearing after Michelle's parental rights had been terminated. The legal significance of this fact is profound. Prior to the supreme court's watershed decision in *Mahone v. Arkansas Department of Human Services*, 2011 Ark. 370, 383 S.W.3d 854, Glover's rights to take custody of his child were impeded by *Judkins v. Duvall*, 97 Ark.App. 260, 248 S.W.3d 492 (2007), which stated that the "highest preference" in any permanency-planning goal was to "return the child to the parent from whom it had been taken." The *Mahone* court overruled *Judkins* and held that custody of a child taken from a

2. During Mr. Glover's time in the Army, he was sending home his entire base pay.

custodial parent should result in first shifting custody to the nonoffending, noncustodial parent. None of the myriad checklist orders entered in this case prior to the termination-of-parental-rights order made a finding that Glover was unfit.

I do not dispute that Mr. Glover failed to jump through the various hoops that the trial court referred to as "services." I submit, however, that as a nonoffending parent, the trial court had no statutory authority to order him to do anything.[3] It is apparent that the trial court never even considered granting custody to Mr. Glover. This fact alone justifies a merit brief. As Justice Baker stated in her concurrence in *Mahone*, Mr. Glover has a fundamental constitutional right to parent E.G. Unfortunately for Mr. Glover, at the time of Mr. Glover's termination-of-parental-rights hearing, our supreme court had not yet decided *Mahone*. Likewise, when this case was submitted in no-merit format, Mr. Glover's appellate attorney did not have the benefit of the supreme court's decision in *Mahone*.

This case came to this court in no-merit format. The rights of nonoffending, noncustodial parents in termination-of-parental-rights cases were, at best, ill-defined. This case should have been returned to Mr. Glover's appellate counsel with an order to rebrief in light of the supreme court's decision in *Mahone*. Although Mr. Glover's appellate counsel has apparently been relieved by the majority, I do not believe that a petition for review is foreclosed.

---

3. Regarding the majority's preservation issue, subject-matter jurisdiction is the power to hear and determine the subject matter in controversy between the parties. *Young v. Smith*, 331 Ark. 525, 964 S.W.2d 784 (1998). The State of Arkansas has no authority to take or withhold custody of a child from a parent that is not unfit. Ark.Code Ann. § 9–27–302(2)(B); *see Mahone v. Arkansas Dep't of Hum. Servs., supra.* Accordingly, the issue of whether the trial court has jurisdiction to order Glover to complete "services" can be heard for the first time on appeal.

The majority is incorrect in their view that Glover is merely the victim of the trial court misapplying a statute. As I said in my dissent from the denial of rehearing in *Mahone v. Arkansas Department of Human Services*, 2011 Ark. App. 153, 154, 2011 WL 662205

The United States Supreme Court has stated that it is a fundamental right to parent a child without interference by the state. Accordingly, there first must be a showing of unfitness before the state may intervene. The fact that one parent is unfit does not alter the state's burden to prove that the other parent is also unable to care for the child before it may interfere in the family. The Supreme Court of the United States has made clear that when both parents are available for their children, the state must prove that each parent is unfit before it may take custody of the children or otherwise interfere with the family. Without a finding of unfitness, the state has no constitutional authority to exercise that power. Under current Supreme Court authority, the existence of a single fit parent, regardless of the acts of the other parent, negates the state's ability to interfere in the family unit. With a fit parent present, the state lacks any compelling interest sufficient to justify state involvement in the family.

Accordingly, the Arkansas Juvenile Code allows a trial court to exercise jurisdiction over a parent only if he or she is unfit. As noted previously, during the pendency of this case, Mr. Glover was never found to be unfit. The majority's reliance on older cases as authority for their position betrays their lack of awareness of a trend in our supreme court's decisions that have expanded the scope of issues that may be raised for the first time on appeal. As recently as February 9, 2011, the supreme court held that a trial court acting without constitutional authority is a matter of subject-matter jurisdiction that may be raised for the first time to an Arkansas appellate court. *State v. D.S.*, 2011 Ark. 45, 378 S.W.3d 87.