BART F. VIRDEN, Judge, dissenting. I respectfully dissent. The legislature has determined public policy for the State of Arkansas to be in favor of placing dependent-neglected juveniles with a relative, if possible, as opposed to placing the juvenile in a state-funded foster home. Arkansas Code Annotated section 9-27-355(b)(1) sets forth: A relative of a juvenile placed in the custody of the Department of Human Services shall be given preferential consideration for placement if the relative caregiver meets all relevant child protection standards and it is in the best ■ -interest of the juvenile to be placed with ' the relative caregiver. Additionally, Arkansas Code Annotated section 9-28-105 sets forth a preference for family placement: In all custodial placements by the Department of Human Services in foster care or adoption, preferential consideration shall be given to an adult relative over a nonrelated caregiver, if: liB(l) The relative caregiver meets all relevant child protection standards; and (2) It is in the best interest of the child to be placed with the relative caregiver. Furthermore, Arkansas Code Annotated sections 9-27-315, 9-27-334(a)(2)(A) and 9-27-338(c)(3)(A), all allow for relative placement of the juvenile at various stages of the dependency-neglect proceedings. In the present case, the Department caseworker testified about her opinion that family placement was in C.E.’s best interest: I think C.E. needs to go to Germany because the issues that exist within the home [still] exist. And he has a relative who has wanted this infant since, for a very long time they’ve been petitioning to get this infant. And so when we have a relative who is appropriate, we place children with relatives who are appropriate to keep them in the family. It also has to be, and in the best interest of the juvenile. The caseworker also stated: “This is what we look at for all children in foster care to make sure that we protect them. Make sure that they get good homes and when at all possible, place them ... with relatives. That is what we do every day.” Here, the trial court gave no consideration to the available relative placement available other than to deny it without discussion. Instead, the court chose to continue custody with the foster family who were allowed to intervene and become parties to the case. The relative offering to take custody of C.E. was serving in the armed forces and was living with his wife and child while stationed in Germany. The home study was admitted into evidence and became part of the record. The home study was approved, and he and his wife expressed a desire to care for his nephew. Despite the majority’s claim otherwise, there was ample evidence of the appropriateness of relative’s home. Both the Department and Ray requested Upthe placement with Ray’s brother, Josh, and his family in Germany. Ray’s parental rights had not been terminated and he was never found to be an unfit parent. While it is true that Josh and his family had never met C.E., it must be remembered that C.E. was taken into state custody at birth and. placed with a foster family who had never “met” him either. To say C.E. had “bonded” with the foster family seeking to adopt him, is of no significance. One would be astounded to find that a newborn had not “bonded” with a family who had cared for him since his birth. The foster parents are to be commended for their willingness to provide a safe and loving home for unfortunate children like C.E.; however, according to Department regulations, a foster home should be temporary, and not an avenue for adoption. The foster care supervisor for the Department testified as follows: When these cases are opened, foster parents are given a handbook.... They signed something stating that they understand this is temporary placement for the child, and this is typically explained at the beginning of the placement. It’s Department policy that whenever there’s a relative to care for the child the Department will make that placement if it’s in the child’s best interest. There’s no information that I have saying that the placement in Germany’s not in this child’s best interest. The majority bases its affirmance on the trial court’s statement that it was in the best interest of C.E. that he remain in the Department’s custody, but that the Department could not change his placement. The majority is eminently correct in stating that the overriding polestar in these cases is the best interest of the child. However, if we simply look for those magic words, stated in a conclusory and perfunctory manner, as was the case here, there is no point in our appellate review. It may very well have been in C.E.’s best interest to remain with his foster family, but the trial court failed to explain why that was a better option than the approved and available relative placement that is the stated public policy as enacted by our ^legislature. In Mahone v. Arkansas Department of Human Services, 2011 Ark. 370, at 5, 383 S.W.3d 854, 857, our supreme court dealt with a similar situation, and in that case it held Further, we are not convinced that, when conducting the best-interest analysis, the circuit court applied the statutory preference afforded to parents. As such, we cannot be assured that if it had applied that preference, the circuit court would have ruled the way it did. Accordingly, we reverse and remand to the circuit court. (Citations omitted.) I would follow Ma-hone, and I would remand the case for the trial court to enter a decision giving appropriate weight to the relative placement preference.